UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-245 (WMW/HB)

UNITED STATES OF AMERICA,

    Plaintiff,

v.                        **THE UNITED STATES' POSITION ON SENTENCING**

RICHARD ALONZO WOODS,

    Defendant.

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its position and memorandum on sentencing. For the reasons that follow, the United States recommends a sentence of imprisonment of 298 months, the bottom of Mr. Woods' advisory guidelines range, as a sentence that is sufficient but not greater than necessary to comport with the various Section 3553(a) factors.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

*1. The Plea, Offense Conduct, and Guidelines Calculations*

On November 10, 2021, Mr. Woods pled guilty to Counts 1-5 and 8 of the Indictment. These counts charge him with: Interference with Commerce by Robbery ("Hobbs Act Robbery") in violation of 18 U.S.C. §§ 2 and 1951 (Count 1); Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) (Counts 2-3); Carrying a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Counts 4-5); and Conspiracy to Commit Armed Bank Robbery, in violation of 18 U.S.C. § 371 (Count 8).

The United States agrees with, and incorporates by reference, the facts from the "Offense Conduct" section of the PSR (¶¶ 8-17), as well as those facts from the parties' Plea Agreement (ECF 56 ¶ 2). To summarize, between February 4, 2018, and May 4, 2018, Mr. Woods committed three armed robberies – stealing roughly $97,309 in cash and merchandise from two banks and one business. Mr. Woods had at least one associate who assisted him with each of the robberies, and each robber (including Mr. Woods) brandished a firearm.

The United States agrees with the PSR's conclusion as to Mr. Woods' adjusted offense level, criminal history category, and sentencing guidelines range. (PSR ¶¶ 155-158.) Mr. Woods' advisory guidelines range is 298-330 months imprisonment, which represents mandatory minimum, consecutive sentences of 84 months each on Counts 4-5, plus 130-162 months' on Counts 1, 2, 3 and 8. The United States also agrees with the PSR's conclusion that the amount of restitution owed is $97,309.79 and is payable as set forth in paragraph 170 as follows:

| Victim | Restitution | Liability |
|---|---|---|
| Project SoZo | $2,500.00 | Sole |
| Lake Area Bank | $6,191.00 | Joint and several with Tyrone Shadale Oaks (0:19CR00191) and Samuel Lamar Brantley (0:19CR00337) |
| Bremer Bank | $88,618.79 | Joint and several with Samuel Lamar Brantley (0:19CR00337) and Pierre Cornelius Stewart (0:20CR00189) |

2. *Mr. Woods' History and Characteristics*

Mr. Woods is a 38-year-old man with an extensive criminal history. Prior to committing the instant offense conduct in early 2018, when he was 34 years old, he had been convicted of six felonies: third degree sale of controlled substances in 2001 and 2002 (age 18 and 19); offering a forged check in 2002 (age 19); fifth degree possession of controlled substances in 2005 (age 23); and being a felon in possession of a firearm in 2006 and 2012 (ages 22 and 28). The 2012 conviction was a federal case, for which Mr. Woods received a sentence of 77 months in prison. (PSR ¶ 87; see also *U.S. v. Woods*, 12-CR-131 (SRN).) Notably, Mr. Woods committed the instant offenses while on federal supervised release for that 2012 conviction. In fact, Mr. Woods committed the robbery described at Count 1 of the Indictment on February 4, 2018, just *three days* after he began his term of supervised release. (PSR ¶ 87.) On May 18, 2018, just two weeks after he robbed Bremer Bank as described at Count 3 of the Indictment, Minneapolis Police responding to a call about a shooting attempted to conduct a traffic stop a vehicle Mr. Woods was driving. (PSR ¶ 91.) Mr. Woods led police on a chase for approximately 16 blocks before stopping. Officers recovered a .380-caliber pistol on the front passenger floorboard and a 9-millimeter semiautomatic pistol on the floorboard behind the passenger seat. The .380 was loaded with five rounds of ammunition (including one round in the chamber). Seventeen rounds of 9-millimeter ammunition were also recovered inside the vehicle. The .380 firearm had been reported stolen. Mr. Woods was federally charged for that incident – which also occurred while he was on supervised release for the 2012 case. (PSR ¶ 91; *U.S. v. Woods*, 18-CR-153.) Mr. Woods pled guilty and was sentenced to another term of 77

months' imprisonment; he has been in federal custody on that matter since May 24, 2018. (PSR F.2.)

Growing up, Mr. Woods experienced trauma that no child should endure. (PSR ¶¶ 111-115.) He never had a relationship with his father. Mr. Woods' mother was addicted to drugs and spent time in prison while he was young. He was severely abused by his mother's husband around age 6, and his mother chose to remain with her abuser rather than retain custody of Mr. Woods and his siblings. He then lived in foster care and later, with his grandmother, in a neighborhood that was riddled with gangs and poverty. By age 10 or 11 Mr. Woods was selling drugs to help with household expenses. Not surprisingly, he showed mental health struggles including anger and violent tendencies beginning at a young age, and he continues to suffer from various mental and physical ailments.

## ARGUMENT

In following the sentencing methodology laid out by the Supreme Court, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50. Section 3553(a) requires the Court to consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18

U.S.C. § 3553(a). But a district court is not required to provide a mechanical recitation of the Section 3553(a) factors and "has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Ballard*, 872 F.3d 883, 885 (8th Cir. 2017); *United States v. San-Miguel*, 634 F.3d 471, 475-76 (8th Cir. 2011).

For the reasons stated herein, the United States advocates for a sentence of 298 months as a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in Section 3553(a)(2).

### A. The Guidelines Calculations

As set forth above, the United States agrees with the calculated total offense level and criminal history category, resulting in the Guidelines range of 298-330 months' imprisonment, with an applicable minimum-mandatory term of 168 months. (PSR ¶¶ 155-158.)

### B. The 3553(a) Factors

A consideration of all the 3553(a) factors warrants a sentence of 298 months' imprisonment. As noted above, Mr. Woods committed a series of armed robberies in early 2018 while on federal supervised release for a firearms charge. He had committed multiple felonies prior to that first federal case, and he committed an additional firearms offense after the robberies. During the bank robberies, Mr. Woods pointed a gun at the victim bank tellers and ordered them to comply with his demands. Victim impact statements from a teller and customer at one of the banks describe the psychological aftermath of being robbed at gunpoint by masked men. They noted suffering from anxiety, depression, sleep

5

disorder, panic disorder, and other symptoms. The bank teller left her job after the robbery, and the customer has not entered *any* bank since the incident.

A significant sentence is necessary to reflect the severity of Mr. Woods' crimes. On balance, a sentence of 298 months would serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to avoid unwarranted sentencing disparities among defendants. Mr. Woods could also potentially benefit from substance-abuse treatment and mental-health programming while incarcerated with the BOP.

Additionally, the United States respectfully asks the Court order Mr. Woods to pay restitution as set forth in paragraph 170 of the PSR, and order that he be required to pay 50 percent of his UNICOR wages toward restitution or, if not working UNICOR, *not more than* $25 per quarter described in the parties' plea agreement. (ECF 56 ¶ 13.)

## CONCLUSION

For all the foregoing reasons, the United States respectfully recommends that the Court impose a sentence of 298 months' imprisonment, restitution as provided herein, followed by three to five years of supervised release.

Dated: March 2, 2022                                         Respectfully submitted,

CHARLES J. KOVATS, JR.
Acting United States Attorney

*s/Amber M. Brennan*
BY:  AMBER M. BRENNAN
Assistant U.S. Attorney